**SO ORDERED.**

**SIGNED this 19th day of September, 2017.**



BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 17-10775** |
| **MOREHEAD MEMORIAL HOSPITAL,** | ) | |
| | ) | **Chapter 11** |
| Debtor. | ) | |
| | ) | |

**ORDER (A) ESTABLISHING BID PROCEDURES RELATED TO THE SALE**
**OF THE DEBTOR'S ASSETS, (B) SCHEDULING A HEARING TO CONSIDER**
**THE PROPOSED SALE AND APPROVING THE FORM AND MANNER OF**
**NOTICE THEREOF, (C) ESTABLISHING PROCEDURES RELATING**
**TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF**
<u>**PROPOSED CURE AMOUNTS, AND (D) GRANTING RELATED RELIEF**</u>

Upon the Debtor's Motion for (I) an Order (A) Establishing Bid Procedures Related to the

Sale of the Debtors' Assets, (B) Scheduling a Hearing to Consider the Proposed Sale Approving

the Form and Manner of Notice Thereof, (C) Establishing Procedures Relating to the Assumption

and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of

Proposed Cure Amounts, and (D) Granting Related Relief, and (II) an Order (A) Approving the

Proposed Sale, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts

and Unexpired Leases, and (C) Granting Related Relief [Docket. No. 190] (the "<u>Motion</u>") filed

by Morehead Memorial Hospital, Chapter 11 debtor and debtor-in-possession (the "<u>Debtor</u>")

in the above-captioned Chapter 11 case, seeking, among other things, approval of certain bid

procedures related to a sale(s) of substantially all of its assets free and clear of all liens, claims,

interests, and encumbrances under 11 U.S.C. § 363(f), all as more fully set forth in the Motion;

the Court having reviewed the Motion, its supporting materials, and all responses thereto, if

any, and having heard the statements of counsel in support of the relief requested therein at

the hearing before the Court on September 13, 2017 (the "<u>Hearing</u>"); the Court having found

and concluded that (i) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (iii) venue is proper

in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iv) notice of the Motion was sufficient

under the circumstances, and (v) the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein; and this Court having determined

that granting the relief requested in the Motion as set forth herein is in the best interests of

the Debtor, its estate and its creditors; and after due deliberation and sufficient cause

appearing therefore;

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is GRANTED as provided herein.

2.     The following bidding procedures are hereby approved:

**I.     <u>Assets to be Sold</u>**

The Debtor shall have the right, consistent with the procedures set forth herein, to sell (the "<u>Sale</u>") substantially all of its assets in bulk or in separate lots, in single or multiple transactions (the "<u>Transferred Assets</u>").  Certain assets of the Debtor are not being sold as part of any proposed sale transaction; these excluded assets include cash, cash equivalents (including investments), restricted use assets, causes of action under Chapter 5 of the Bankruptcy Code, any claims or causes of action (other than claims or causes of action arising under any Potentially Assumed Executory Contract), any amounts payable to the Debtor as a result of any underpayments to the Debtor based on any cost reports (including Medicare and Medicaid cost reports) for the periods prior to the closing of the Sale(s), any grants, payments or subsidies payable to the Debtor relating

to the Debtor's operations prior to the closing of the Sale(s), any insurance policies and the rights and proceeds thereunder, and any other assets that the Debtor, in consultation with First-Citizens Bank & Trust Company, the Committee, Berkadia, and HUD (as each is defined in this Order) may determine to exclude from the Sale(s).

## II.    Summary of Important Dates[1]

| | |
|---|---|
| October 23, 2017, 5:00 p.m. Eastern Time | • Deadline to submit Bids |
| October 25, 2017, 5:00 p.m. Eastern time | • Deadline to file notice of Qualified Bidders |
| October 27, 2017 | • Deadline for Debtor to designate and communicate Starting Bid to Qualified Bidders |
| October 30, 2017, 10:00 a.m. Eastern Time | • Auction to be conducted at the offices of Waldrep LLP, 101 South Stratford Road, Suite 210, Winston-Salem, NC 27104 |
| October 31, 2017[2] | • Deadline for Debtor to file notice of Successful Bidder and Next-Highest Bidder |
| November 2, 2017 | • Deadline to object to Sale and Cure Amount (if applicable) |
| November 6, 2017, 2:00 p.m. Eastern Time | • Sale Hearing, to be conducted at the U.S. Bankruptcy Court for the Middle District of North Carolina, Greensboro Division, 101 South Edgeworth Street, Greensboro, NC 27401 |

## III.    Bid Requirements

All bids (each hereinafter, a "Bid") must (collectively, the "Bid Requirements"):[3]

(a)    be accompanied by a letter:

(i)    stating with specificity (i) the Transferred Assets (including the specific executory contracts and unexpired leases) contemplated in the Bid any person seeking to acquire any of the Transferred Assets (a "Potential Bidder") wishes to bid on, together with a schedule allocating the value of

---

[1] All terms used in the schedule below shall have the meanings ascribed to them in this Order.

[2] If the Auction continues past October 30, 2017, the notice of Successful Bidder and Next-Highest Bidder shall be filed one (1) business day after the conclusion of the Auction.

[3] In the event Berkadia, HUD, or First Citizens exercises its right to submit a credit Bid, such credit Bid must comply with the Bid Requirements except those Bid Requirements contained in (a)(iv) and (a)(vi) below.

the Bid across its component Transferred Assets (the "Allocation")[4], and (ii) the liabilities and obligations (including applicable cure costs) to be assumed by the Potential Bidder in the Sale;

(ii)    stating whether the Potential Bidder intends to assume (i) sponsorship of all or any part of or (ii) any of the potential liabilities associated with the Pension Plan of Morehead Memorial Hospital (the "Pension Plan");

(iii)    agreeing that the Potential Bidder's offer is binding and irrevocable until the earlier of (i) the Closing Date (as defined herein), or (ii) ten (10) days after the Sale Hearing (unless selected as the Next-Highest Bidder (as defined below)), in which case such offer will remain open until the Sale(s) is consummated or sixty (60) days after the date on which it is determined that the Successful Bidder(s) will not be consummating the Sale(s), whichever is earlier);

(iv)    providing evidence of committed financing or available capital sufficient to consummate the transaction and stating that such Bid is not subject to any due diligence or financing contingency;

(v)    providing that the Potential Bidder agrees to serve as a backup bidder (the "Next-Highest Bidder") if the Potential Bidder's Qualified Bid (as defined below) is the next highest and best bid after the Successful Bid (as defined below) (the "Next-Highest Bid") with respect to the relevant Assets; and

(vi)    be accompanied by adequate assurance of future performance information (the "Adequate Assurance Information"), including (i) information about the Potential Bidder's financial statements and federal tax returns for two years, and bank account statements for the preceding three-month period, (ii) information demonstrating (in the Debtor's reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale, (iii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, (iv) the identity and exact legal name of the Potential Bidder (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale), including the legal name of the entity that the Potential Bidder intends to be the assignee of any leases that are included in the Bid, (v) a summary of the Potential Bidder's operational experience for hospitals and skilled nursing facilities if the Potential Bidder intends to operate the hospital or skilled nursing facility as such a facility, (vi) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include. By submitting a Bid, Potential Bidders agree that the Debtor may disseminate

---

[4] The Debtor and the Consultation Parties reserve the right to request additional details regarding the Allocation. All disputes related to the Allocation shall be reserved for the Sale Hearing.

their Adequate Assurance Information to affected landlords, contract counterparties, and the Consultation Parties, among others, in the event that the Debtor determine such bid to be a Qualified Bid (as defined below).

The closing shall not be contingent in any way on the Successful Bidder's financing or such other evidence of ability to consummate the transaction(s) as the Debtor may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (provided that such commitments may have covenants and conditions acceptable to the Debtor).

## IV. **Qualified Bidders**

Only Qualified Bidders may participate in the Auction (as defined below).  To become a Qualified Bidder, a Potential Bidder must[5] (i) execute and deliver to the Debtor a confidentiality agreement prepared by the Debtor, (ii) deposit with counsel for the Debtor the higher of $500,000 or ten percent (10%) of the Bid amount (the "Bidder's Deposit"), which deposit shall be refundable only as described below; (iii) submit to the Debtor an unqualified and binding bid that meets the Bid Requirements; (iv) describe the Potential Bidder's ability to obtain any regulatory approvals necessary to consummate the Sale sufficient to allow the Debtor, in consultation with the Unsecured Creditors Committee (the "Committee"), Berkadia Commercial Mortgage, LLC ("Berkadia"), and the Department of Housing and Urban Development ("HUD," and collectively with Berkadia and the Committee, the "Consultation Parties"), [6] to make a reasonable determination as to such Potential Bidder's ability to consummate a Sale as contemplated herein; and (v) if applicable, provide that the Potential Bidder, if successful, will assume the Debtor's Medicare and Medicaid provider agreements or will obtain its own within a timeframe acceptable to the Debtor in consultation with the Consultation Parties (each, a "Qualified Bid").  The Debtor shall timely provide copies of all Bids received to counsel for the Consultation Parties, and shall determine, in consultation with the Consultation Parties, which Bids, if any, constitute Qualified Bids.

The Debtor, in its business judgment, and in consultation with the Consultation Parties, reserves the right to reject any Bid if such Bid, among other things:

(a)    lacks adequate consideration for the assets being purchased;

(b)    requires any indemnification of the Potential Bidder in its purchase agreement;

(c)    is not received by the Bid Deadline (as defined below);

---

[5] In the event Berkadia, HUD, or First Citizens exercises its right to submit a credit Bid, such credit bidding party will be a Qualified Bidder as long as it fulfils (i) and (iii) in this paragraph.

[6] First-Citizens Bank & Trust Company ("First Citizens") shall also be considered a Consultation Party, but only with respect to the assets in which First Citizens asserts an interest.

(d)      is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the relevant Transferred Assets; or

(e)      does not, in the Debtor's determination (after consultation with the Consultation Parties), include a fair and adequate price, the acceptance of which would not be in the best interests of the Debtor's estate.

Any Bid rejected pursuant to the preceding paragraph shall not be deemed to be a Qualified Bid.

## V.    **Bid Deadline**

Bids must be delivered to counsel for the Debtor, Thomas W. Waldrep, Jr., via email (twaldrep@waldrepllp.com) on or before **5:00 p.m. Eastern Time on October 23, 2017** (the "Bid Deadline").

## VI.    **Notice of Qualified Bidders**

On or before **5:00 p.m. Eastern Time on October 25, 2017**, the Debtor shall file a notice with the Court identifying all Qualified Bidders (the "Qualified Bidder Notice") and attaching copies of all bids that were timely received without attaching copies of the accompanying letters outlined in III(a).  Also on or before 5:00 p.m. Eastern Time on October 25, 2017, the Debtor shall serve a copy of the Qualified Bidder Notice and the corresponding bids without attaching the accompanying letters outlined in III(a) on all Qualified Bidders by (a) facsimile; (b) electronic mail; or (c) overnight delivery.

## VII.    **Auction**

If one or more timely Qualified Bids are received, an open auction (the "Auction") for the Transferred Assets will be conducted on **October 30, 2017, commencing at 10:00 a.m. Eastern Time** at the offices of Waldrep LLP, 101 S. Stratford Rd., Suite 210, Winston-Salem, North Carolina 27104.  Only Qualified Bidders may participate in the Auction.  The following parties shall be entitled to attend but not participate in the Auction (unless they are also a Qualified Bidder): (i) the Consultation Parties and their respective professionals (including professionals for any member of such Consultation Party), and (ii) any creditor providing written notice to Debtor's counsel of their intention to attend and observe the Auction on or before the Bid Deadline.

Each Qualified Bidder participating in the Auction will be required to confirm, in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the bidding process, and (b) its Qualified Bid is a good faith, bona fide offer that it intends to consummate if selected as the Successful Bidder (as defined below).

The Debtor will conduct the Auction and shall determine, after consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best Qualified Bid for the relevant Transferred Assets (the "Starting Bid"), which determination will be communicated to Qualified Bidders on or before **October 27, 2017**.

Bidding at the Auction for the Transferred Assets (or relevant subset thereof) that are subject to Qualified Bids will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves on such Qualified Bidder's immediately prior Qualified Bid and (ii) the Debtor reasonably determines, in consultation with the Consultation Parties, is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below) (a "<u>Subsequent Bid</u>"). Each Subsequent Bid at the Auction shall provide net value to the estate in a minimum amount to be set forth in the Qualified Bidder Notice (the "<u>Incremental Overbid</u>") over the Starting Bid or the Leading Bid (as defined below), as the case may be, as determined by the Debtor in the exercise of their reasonable business judgment and in consultation with the Consultation Parties. After the first round of bidding and between each subsequent round of bidding, the Debtor shall announce the bid that they believe to be the highest or otherwise best offer for the subject Assets (the "<u>Leading Bid</u>"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Starting Bid or Leading Bid, as applicable, subject to the Debtor's authority to revise the Auction procedures as set forth below. Qualified Bidders may not pass or otherwise decline to bid in any round of bidding without forfeiting their standing in the Auction.

All Qualified Bidders must be physically present at the Auction. Authorized representatives of such Qualified Bidders, with prior written consent of the Consultation Parties, may be physically present or present via teleconference at the Auction.

The Debtor may, in consultation with the Consultation Parties, announce at the Auction additional procedural rules (*e.g.*, the maximum amount of time to make Subsequent Bids, a change to the amount of the Incremental Overbid, or the requirement that parties submit "best and final" Bids, or other rules to facilitate the Auction) for conducting the Auction or otherwise modify these Bid Procedures; provided that such rules (1) are not materially inconsistent with the Bankruptcy Code or any Order of the Bankruptcy Court, and (2) are disclosed to each Qualified Bidder during the Auction. If any Qualified Bidder asserts that it was unfairly prejudiced by an additional procedure rule announced at the Auction, then such Qualified Bidder may object to the Sale(s) at the Sale Hearing, but only on procedural grounds. Furthermore, the Debtor, any of the Consultation Parties, and any Qualified Bidder shall be able to contact the Court on or before the date of the Auction to schedule a telephonic hearing to resolve a dispute arising at the Auction related to any additional procedural rule announced at the Auction. The bidding at the Auction shall be transcribed or videotaped, and the Debtor shall maintain a transcript of all Bids made and announced at the Auction.

Notwithstanding anything to the contrary herein, the Debtor, in consultation with its professionals and in consultation with the Consultation Parties, may conduct the Auction in any manner that may result in one or more of the highest or best offers for any or all of the Transferred Assets that will maximize the value of any of the Transferred Assets. Further, the Debtor, in consultation with the Consultation Parties, reserves the right to decline any or all of the Bids received at auction as insufficient to proceed with a sale of the Transferred Assets or otherwise unacceptable.

All Potential and Qualified Bidders at the Auction will be deemed to have consented to the core and exclusive jurisdiction of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sale, and the construction and enforcement of any purchase agreement and all other agreements entered into in connection with any proposed Sale transaction. Further, by participating in the bidding process, all Potential Bidders will be deemed to have waived any right to seek a claim for substantial contribution pursuant to section 503 of the Bankruptcy Code or the payment of any fees or costs, including, but not limited to, any break-up, termination or similar fee. Except as otherwise ordered by this Court, there shall be no payment of any broker fees or costs in connection with the Sale.

## VIII.    Selection of the Successful Bid

Immediately prior to the conclusion of the Auction, the Debtor, in consultation with the Consultation Parties will, for the Transferred Assets (or applicable subset(s) thereof) that were subject to the Auction: (a) determine, consistent with these bid procedures, which bid(s) constitutes the highest or otherwise best bid(s) (the "Successful Bid(s)"); and (b) notify all Qualified Bidders at the Auction for the subject Assets, prior to its conclusion, of the name(s) of the party(ies) submitting the Successful Bid(s) (the "Successful Bidder(s)") with respect to the subject Transferred Assets, and the amount and other material terms of the Successful Bid(s). The Debtor may, in its discretion after consultation with the Consultation Parties, designate the Next-Highest Bidder(s) (and the corresponding Next-Highest Bid(s)) to close with respect to the subject Transferred Assets in the event that the Successful Bidder(s) does not close the Sale(s). Unless the Bankruptcy Court orders otherwise upon application by the Debtor, the Debtor shall not consider any Bids or Subsequent Bids submitted after the conclusion of the Auction and any and all such Bids and Subsequent Bids shall be deemed untimely and shall not constitutes Qualified Bids.

The Debtor may seek approval of any Successful Bid(s) and any Next-Highest Bid(s) at the Sale Hearing (defined below). If for any reason the Qualified Bidder(s) submitting the Successful Bid(s) fails to timely consummate the purchase of the Transferred Assets, the Debtor may seek to consummate the Sale(s) based on the Next-Highest Bid(s) without further approval by the Court. The Next-Highest Bid(s) and the obligation of the party(ies) submitting such bid(s) to consummate the purchase of the Transferred Assets shall remain open and in full force, including with respect to the Bidder's Deposit, until the Sale(s) is consummated or sixty (60) days after the date on which it is determined that the Successful Bidder(s) will not be consummating the Sale(s), whichever is earlier.

The Debtor's presentation to the Bankruptcy Court for approval of a selected Bid(s) as a Successful Bid(s) does not constitute the Debtor's acceptance of such Bid(s). The Debtor will have accepted the Successful Bid(s) only when such Successful Bid(s) has been approved by the Bankruptcy Court at the Sale Hearing. The Debtor intends to close the Sale(s) within sixty (60) days after the Sale(s) is approved by the Bankruptcy Court, unless another time or date, or both, are agreed to in writing by the Debtor and the Successful Bidder (the "Closing Date"), or upon direction from the Bankruptcy Court.

**IX.**    **Notice of Successful Bid and Next-Highest Bid**

On **October 31, 2017**, the Debtor shall file a notice with the Court identifying the Successful Bidder and the Next-Highest Bidder.  If the Auction continues past October 30, 2017, the notice shall be filed one (1) business day after the conclusion of the Auction.

**X.**    **Sale Hearing**

A hearing to approve a sale(s) based on the Successful Bid(s) (the "Sale Hearing") shall take place on **November 6, 2017, at 2:00 p.m. Eastern Time** in the United States Bankruptcy Court, Greensboro, North Carolina.  The Sale Hearing may be adjourned by the Debtor in consultation with the Consultation Parties from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtor's Chapter 11 case.

**XI.**    **Objections to Sale**

All objections to the proposed Sale(s) must be filed on or before **November 2, 2017**.  All rights of Consultation Parties to object to the proposed Sale(s), including under section 363(f) of the Bankruptcy Code, are preserved.

**XII.**    **Return of Deposits**

Within three (3) business days after the conclusion of the Auction described above, the Debtor shall return by check or wire the full amount of the Bidder's Deposit submitted by each party that is not selected as submitting the Successful Bid(s) or the Next-Highest Bid(s).  If the Sale(s) of the Transferred Assets is consummated with the party submitting the Successful Bid(s), the Bidder's Deposit(s) of the party(ies) that is declared to have submitted the Next-Highest Bid(s) shall be returned by check or wire transfer within three (3) business days after the closing of the Sale(s) to the party(ies) submitting the Successful Bid(s).  If the party(ies) submitting the Successful Bid(s) fails to consummate the Sale(s) of Transferred Assets, the deposit of the party(ies) submitting the Successful Bid(s) will not be returned and will be retained by the Debtor as liquidated damages.

**XIII.**    **Notice of Bid Procedures, Auction, and Sale Hearing**

Within three (3) business days following the entry of this Order, the Debtor will serve by first-class mail a copy of this Order and a notice containing the date of the Auction, the Sale Hearing, and the deadline to file objections to the Sale(s) to: (i) all potential purchasers previously identified or solicited by the Debtor and its professionals; (ii) the Office of the Bankruptcy Administrator; (iii) counsel for the Committee; (iv) the North Carolina Department of Health and Human Services; (v) all parties that are known to possess or assert a lien, claim, encumbrance, or interest in or upon any of the Transferred Assets; (vi) all applicable United States, state and local regulatory or taxing authorities, recording offices, or any governmental entity that have a reasonably known interest in the Transferred Assets; and (vii) all parties on the most current master service list filed in this case.  Such notice shall be sufficient and proper notice of the sale with respect to known interested parties.  Such notice shall include a caveat stating that the Auction will

be canceled in the event that (i) this case converts to a case under Chapter 7; or (ii) the Debtor's right to use cash collateral terminates.

## XIV.    **Assumed Contract Procedures**

The following procedures regarding the assumption and assignment of certain executory contracts and/or unexpired leases (collectively, the "Potentially Assumed Executory Contracts") are hereby approved:

(a)    With respect to the Potentially Assumed Executory Contracts, no later than ten (10) business days after entry of this Order, the Debtor will file with the Court and serve on each party to a Potentially Assumed Executory Contract a notice setting forth the amount of cure owed thereunder according to the Debtor's books and records (the "Cure Notice").  The Cure Notice shall state the cure amount that the Debtor believes is necessary to assume such contract or lease pursuant to section 365 of the Bankruptcy Code (the "Cure Amount"), and notify each party that such party's lease or contract may be assumed and assigned to the Successful Bidder to be identified at the conclusion of the Auction.

(b)    Any objection to the Cure Amount or the assumption and assignment of a Potentially Assumed Executory Contract must be filed on or before **November 2, 2017** (the "Cure Objection Deadline").  Any such objection must state with specificity what cure the party to the Potentially Assumed Executory Contract believes is required with appropriate documentation in support thereof.  If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any Potentially Assumed Executory Contract or other document as of the date of the Cure Notice; the non-debtor party to the Potentially Assumed Executory Contract shall be deemed to have stipulated that the Cure Amount set forth in the Cure Notice is correct; the non-debtor party shall be forever barred, estopped and enjoined from asserting or claiming that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Potentially Assumed Executory Contract, or that there is any objection or defense to the assumption and assignment of such Potentially Assumed Executory Contract, including any argument that there exist conditions to assumption and assignment that must be satisfied under such Potentially Assumed Executory Contract or that any required consent to assignment has not been given.

## XV.    **Reservation of Rights and Modifications**

Notwithstanding any of the foregoing, the Debtor, in consultation with the  Consultation Parties reserves the right to modify these bid procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Qualified Bid requirements), impose additional terms and conditions with respect to any or all potential bidders, adjourn or cancel or change the location of the Auction at or prior to the Auction, and adjourn the Sale Hearing.

3.      Nothing in this Order shall prevent or preclude Berkadia, HUD, or First-Citizens from exercising their rights under 11 U.S.C. § 363(k) to bid up to the full amount of their claims as a credit against the purchase price of their real property collateral in accordance with this Order.

4.      Each of the Consultation Parties, including First-Citizens Bank & Trust Company, expressly reserves and preserves any rights and claims regarding the valuation of the Transferred Assets for purposes of Section 506 of the Bankruptcy Code or otherwise and any Allocation of a Transferred Asset by a Potential Bidder shall not bind any Consultation Party to the value ascribed thereto.  Any valuation of any Transferred Asset for purposes of Section 506 of the Bankruptcy Code or otherwise shall be subject to further Order of this Court.

5.      The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order.

6.      The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

--End of Document--