**SO ORDERED.**

**SIGNED this 14th day of May, 2018.**

_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 17-10775 |
| MOREHEAD MEMORIAL HOSPITAL, ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |

**CONSENT ORDER ALLOWING ASSUMPTION AND ASSIGNMENT BY DEBTOR TO UNC-ROCKINGHAM AND RESOLVING OBJECTION OF N.C. DEPARTMENT OF HEALTH AND HUMAN SERVICES TO DEBTOR'S AMENDED NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES SUBJECT TO POSSIBLE ASSUMPTION AND ASSIGNMENT AND PROPOSED CURE AMOUNTS**

The matter before the Court is the Objection of N.C. Department of Health and Human Services to Debtor's Amended Notice of Executory Contracts and Unexpired Leases Subject to Possible Assumption and Assignment and Proposed Cure Amounts (the "Objection"), filed by the North Carolina Department of Health and Human Services ("DHHS"), Division of Medical Assistance (collectively, "DMA"). *See* Docket No. 446. Based upon the consent, stipulation, and agreement of DMA, The University of North Carolina Health Care System ("UNCHCS"), UNC Rockingham Health Care, Inc. ("UNC Rockingham"), and the debtor Morehead Memorial Hospital (the "Debtor"), the Court makes the following findings of fact and conclusions of law:

1. The Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on July 10, 2017.

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 1334 and 157, and this matter is a core proceeding.

3. The Debtor and DMA are parties to several Provider Administrative Participation Agreements (as amended from time to time, the "Participation Agreements"). The Participation Agreements establish the terms whereby Debtor participates in the North Carolina Medicaid Program, including billing and payment for covered services provided to Medicaid recipients, and the withholding, refund or recoupment of monies received in error or in excess of the amount to which Debtor is entitled from DMA. Pursuant to the Participation Agreements, the Debtor has DHHS/DMA provider numbers for purposes of Medicaid billing (the "Provider Numbers").

4. In addition, the Debtor is a participant in the North Carolina Medicaid GAP Assessment Program ("GAP"). Under the GAP program, the Debtor, as a participating hospital, makes payments into a fund managed by the State of North Carolina, and in turn, receives reimbursements from that fund based on its actual Medicaid costs. Each year, the Debtor prepares and submits annual cost reports to DMA containing, among other information, cost and charge data, for the services it provided to Medicaid recipients during the reported year.

5. Post-petition, and pursuant to a directive from the Centers for Medicare and Medicaid Services ("CMS"), DMA recalculated the GAP payment for the twelve-month period ending on September 30, 2016 (the "2016 GAP Recalculation"), which resulted in DMA being able to make a supplemental reimbursement for the 2016 GAP program year.

6. On August 30, 2017, the Debtor filed a Motion for (I) An Order (A) Establishing Bid Procedures Related to the Sale of the Debtor's Assets, (B) Scheduling a Hearing to Consider the Proposed Sale and Approving the Form and Manner of Notice Thereof, (C) Establishing Procedures lating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases,

Including Notice of Proposed Cure Amounts, and (D) Granting Related Relief, and (II) An Order (A) Approving the Proposed Sale, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief (the "Bid Procedures Motion"), whereby the Debtor sought approval of certain bid procedures in order to sell, free and clear of liens, claims, interests and encumbrances, substantially all of the Debtor's assets, defined therein as the Transferred Assets, by way of an auction process.

7. On September 19, 2017, the Court entered an Order (A) Establishing Bid Procedures Related to the Sale of the Debtor's Assets, (B) Scheduling a Hearing to Consider the Proposed Sale and Approving the Form and Manner of Notice Thereof, (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts, and (D) Granting Related Relief (the "Bid Procedures Order").

8. On October 27, 2017, and pursuant to the Bid Procedures Order, the Debtor filed its Amended Notice of Executory Contracts and Unexpired Leases Subject to Possible Assumption and Assignment and Proposed Cure Amounts (the "Cure Notice"), pursuant to which the Debtor identified the proposed cure amounts for all of its executory contracts and unexpired leases subject to potential assumption and/or assignment (the "Potentially Assumed Executory Contracts") to the successful bidder to be identified at the conclusion of the auction of the Transferred Assets. The Cure Notice listed the Participation Agreements as Potentially Assumed Executory Contracts, and included a proposed a cure amount of $0.00.

9. On November 30, 2017, DMA filed the Objection to the Debtor's proposed cure amount for the Participation Agreements, alleging that the actual cure amount was $170,247.62.

10. On November 30, 2017, the Court entered an Order (A) Authorizing and Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B)

3

Approving the Asset Purchase Agreement, and (C) Granting Related Relief (the "Sale Order"), which authorized the sale of the Transferred Assets to UNCHCS free and clear of liens (the "Sale").

11. The Sale to UNCHCS closed on January 1, 2018 (the "Closing"). Pursuant to the Sale Order and the Asset Purchase Agreement, the Debtor conveyed the Transferred Assets to UNC Rockingham.

12. Subsequent to the Closing, UNC Rockingham decided to assume the Participation Agreements by way of an assumption and assignment by the Debtor pursuant to Section 365(b) of the Bankruptcy Code. UNC Rockingham and DMA have been in negotiations regarding the cure amount corresponding to the assumption.

13. Pursuant to the 2016 GAP Recalculation, on February 14, 2018, the Debtor paid $197,451.00 (the "2016 GAP Payment") to DMA, and is entitled to a reimbursement in the amount of $240,646.00 (the "2016 GAP Reimbursement").

14. On December 22, 2017, DMA filed a proof of claim (Claim No. 196) against the Debtor in the amount of $172,051.17 (the "POC"). On February 20, 2018, DMA filed an amended proof of claim against the Debtor in the amount of $170,603.46 (the "APOC") and asserted a right of setoff against the 2016 GAP Reimbursement. Also on February 20, 2018, DMA filed a Motion for Relief from the Automatic Stay to Allow Setoff of GAP Payment (the "Setoff Motion"), seeking relief from the automatic stay in order to set off the 2016 GAP Reimbursement against the amount of the APOC. DMA is presently holding the 2016 GAP Reimbursement. On March 16, 2018, DMA filed an administrative proof of claim against the Debtor in the amount of $79,346.67 (the "Administrative POC").

15. In late February or early March 2018, UNC Rockingham submitted a cost report on behalf of the Debtor for a period predating the Closing (the "2017 Cost Report"), which is currently

being audited by DMA. The Debtor's liability for the 2017 Cost Report has already been paid, subject to the audit currently underway.

16. A final cost report, which shall close out all of the remaining cost reports of the Debtor due to DMA (the "Final Cost Report"), remains outstanding and must be filed within the next few months.

17. On April 10, 2018, the Court conducted an omnibus hearing on the Objection to the Cure Notice, among other matters, at which time counsel for UNCHCS, UNC Rockingham and DMA appeared and announced the terms of a settlement that had been agreed to by the parties with respect to the assumption and assignment of the Participation Agreements and resolving the Objection to the cure amount.

17. In accordance with the parties' agreement and the Court's approval thereof,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

    a. Based on the terms herein, the requirements for assumption and assignment to UNC Rockingham under Section 365(b)(1) have been satisfied, and the Debtor may assume and assign to UNC Rockingham the Participation Agreements, including the Debtor's Provider Numbers. DMA shall accept this assignment and the status of UNC Rockingham as the assignee of the same as of the date of this Consent Order;

    b. UNC Rockingham and DMA agree that UNC Rockingham will pay a cure amount in connection with the assumption and assignment in the total amount of $250,000.00 (the "Cure Amount");

    c. Of the Cure Amount, a portion has already been paid by UNC Rockingham. The amount of $96,641.00 remains outstanding, and this amount shall be paid by UNC Rockingham within ten (10) days of the Court's entry of this Consent Order;

      d.      On or before April 30, 2018, UNC Rockingham shall file the Final Cost Report and pay any corresponding amount due upon filing;

      e.      DMA shall have a period of ninety days (the "Audit Period"), calculated from the date it receives the Final Cost Report, to audit the Final Cost Report and complete its audit of the 2017 Cost Report;

      f.      Upon DMA's completion of its audits of the Final Cost Report and the 2017 Cost Report, UNC Rockingham shall pay any liability resulting from the audits, subject to UNC Rockingham's right to file (1) a Reconsideration Request under Subchapter 22J of Title 10A of the North Carolina Administrative Code, or (2) a contested case petition with the Office of Administrative Hearings pursuant to N.C. Gen. Stat. § 150B-23(a);

      g.      Notwithstanding any other provision of this Consent Order, the Debtor shall have no liability to DMA, UNCHCS, or UNC Rockingham resulting from any DMA audits with respect to claims for service, transactions, assessments, or cost reports covering any periods of time, including without limitation, the 2017 Cost Report and the Final Cost Report; provided, however, that, if either the Final Cost Report or the 2017 Cost Report (or any DMA audit with respect to claims for service, transactions, assessments, or cost reports covering any periods of time prior to the Closing) result in a refund from DMA, then such refund shall be paid to the Debtor, not UNCHCS or UNC Rockingham;

      h.      DMA shall not be allowed any claim against the Debtor, and the POC, the APOC, and the Administrative POC are hereby disallowed;

      i.      Following the expiration of the Audit Period, DMA shall have no right to conduct further auditing with respect to claims for service, transactions, assessments, or cost reports covering any periods of time prior to the Closing, including without limitation, the 2017 Cost

Report and the Final Cost Report, and DMA shall have no right of withholding, setoff, recovery or recoupment with respect to transactions or cost reports covering any periods of time prior to the Closing, including without limitation, the 2017 Cost Report and the Final Cost Report, and any outstanding liability of the Debtor or UNC Rockingham with respect to transactions or cost reports covering any periods of time prior to the Closing, including without limitation, the 2017 Cost Report and the Final Cost Report, shall be forever extinguished.  Further, following the expiration of the Audit Period, neither UNCHCS nor UNC Rockingham will have an obligation to refund any monies received in error or in excess of the amount to which Debtor was entitled with respect to claims for service, transactions, assessments, or cost reports covering any periods of time prior to the Closing, including without limitation, the 2017 Cost Report and the Final Cost Report;

        j.      The terms of this Consent Order shall not be deemed an admission by any of the parties to this Consent Order.  Notwithstanding any other provision of this Consent Order (other than decretal paragraph g. above), if administrative or legal action is pursued in the future by any third party or entity, including the Federal Government, against DHHS, the terms of this Consent Order shall not be construed to estop or otherwise preclude DMA from pursuing any claims or raising any issues which would be available in the absence of the settlement embodied within this Consent Order.  In such event, UNC Rockingham would also not be estopped or precluded from pursuing any defenses or raising any issues which would be available in the absence of this Consent Order.  Furthermore, DHHS expressly reserves the right to take appropriate action in the event that a third party or other entity, including the Federal Government or the North Carolina Medicaid Investigations Division of the North Carolina Attorney General's Office, initiates legal or administrative action based on evidence or allegations of fraud or other illegal conduct on the part of UNC Rockingham with respect to the care or services provided to patients involved in this matter.

Nothing in this Consent Order shall be construed to prevent the Federal Government or the North Carolina Medicaid Investigations Division of the North Carolina Attorney General's Office from independently taking any action in the future against UNC Rockingham.  In such event, UNC Rockingham does not waive and expressly reserves any and all administrative or legal rights to challenge any such action;

      k.     Any dispute between UNC Rockingham and DMA regarding the audit process shall be resolved pursuant to the typical audit dispute resolution procedures provided by DMA under the Participation Agreements;

      l.     Upon DMA's receipt of the full Cure Amount from UNC Rockingham, DMA shall disburse the 2016 GAP Reimbursement in the amount of $240,646.00 to the Debtor's bankruptcy estate; and

      m.     DMA's Objection is hereby resolved in accordance with the foregoing terms, and the Setoff Motion is hereby mooted and will be resolved with a separate consent order.

END OF ORDER

<u>WE CONSENT:</u>

| | |
|---|---|
| /s/ Margaret R. Westbrook | /s/ Jennifer B. Lyday |
| Margaret R. Westbrook | Jennifer B. Lyday |
| North Carolina State Bar No. 23327 | North Carolina Bar No. 39871 |
| Emily Mather | Waldrep LLP |
| North Carolina State Bar No. 47925 | 101 S. Stratford Road, Suite 210 |
| K&L Gates LLP | Winston-Salem, North Carolina 27104 |
| Post Office Box 17047 (27619-7047) | Telephone: (336) 717-1283 |
| 4350 Lassiter at North Hills Avenue, Ste 300 | Facsimile:  (336) 717-1340 |
| Raleigh, North Carolina 27609 | jlyday@waldrepllp.com |
| Telephone:  (919) 743-7306 | *Attorney for the Debtor* |
| Facsimile:   (919) 516-2006 | |
| *Attorneys for UNCHCS and UNC Rockingham* | |